DECISION AND JOURNAL ENTRY
{¶ 1} Defendant, Anthony C. Owens, appeals from the judgment of the Summit County Court of Common Pleas, which convicted him of possession of cocaine, menacing, and criminal trespass. We affirm.
 {¶ 2} On April 15, 2003, the Summit County Grand Jury charged Defendant with one count of possession of cocaine, in violation of R.C. 2925.11(A); one count of menacing, in violation of R.C.2903.22; one count of criminal trespass, in violation of R.C.2911.21(A)(1); and one count of disorderly conduct, in violation of R.C. 2917.11(B)(2). A jury trial was held and Defendant was found guilty of possession of cocaine, menacing, and criminal trespass and sentenced accordingly. It is from this order that Defendant appealed, presenting three assignments of error. The assignments of error have been rearranged and consolidated for ease of review.
 ASSIGNMENT OF ERROR II
"The trial court erred to the prejudice of [Defendant] when it denied his motion for judgment of acquittal and then entered a judgment of guilty of possession of cocaine, * * * menacing * * *, and criminal trespass[.]"
 ASSIGNMENT OF ERROR III
"The verdict finding [Defendant] guilty of possession of * * * cocaine * * *, menacing * * *, and criminal trespass * * * was against the manifest weight of the evidence."
 {¶ 3} In his second and third assignments of error, Defendant challenges the adequacy of the evidence presented at trial. Specifically, Defendant avers that the State failed to present sufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and that his convictions for possession of cocaine, menacing, and criminal trespassing were against the manifest weight of the evidence presented at trial. Defendant's assignments of error lack merit.
 {¶ 4} As a preliminary matter, we note that sufficiency of the evidence produced by the State and the weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins, 78 Ohio St.3d 380, 38, 1997-Ohio-52. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 5} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id
 {¶ 6} In the present matter, Defendant was convicted of possession of cocaine, menacing, and criminal trespass. Pursuant to R.C. 2925.11(A), no person shall knowingly possess a controlled substance. One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 7} In order to be found guilty of menacing, the State must demonstrate that Defendant "knowingly caus[ed] another to believe that [Defendant] [would] cause physical harm to the person or property of the other person[.]" R.C. 2903.22(A). To be convicted of criminal trespassing, Defendant must have "knowingly enter[ed] or remain[ed] on the land or premises of another[,]" without privilege to do so. R.C. 2911.21(A)(1).
 {¶ 8} At trial, Heather Jones ("Jones") testified that she has known Defendant for approximately eleven years and indicated that they have had a dating relationship. Jones explained that she ended their relationship, in December of 2002, because there was too much arguing and fighting. Since then, Jones stated that Defendant calls her several times a day at her place of work, Akron Rubber Machinery, and "come[s] around [her] all the time." She further stated that Defendant was both "nice" and "mean" during these conversations. Jones asserted that she instructed Defendant not to call her while she was at work as he would upset her when he started arguing. Jones indicated that others in the office, including her boss, John Hausman ("Hausman"), were aware of the difficulties she was experiencing with Defendant.
 {¶ 9} Jones testified that on April 4, 2003, while she was at work, Defendant called her roughly three or four times. Jones indicated that Defendant was pleasant throughout the first call and then became increasingly more agitated. The last telephone call ended with Defendant asking "[i]s it that bad?" and Jones replying "[d]on't call my job again today." Jones asserted that minutes later, she heard Defendant enter her place of work, screaming obscenities. Jones recalled Defendant yelling "[n]ow I'm here, now bitch, now what?" upon opening the door. Jones explained that she became frightened and tried to exit the room "because he [had] done this before[.]" She indicated that Defendant has hit her in the past. Defendant then moved towards her while still shouting obscenities. Jones stated that she was able to lock herself in an adjacent office and dialed 9-1-1. She remained in the room for approximately forty minutes and emerged after the police arrived.
 {¶ 10} Hausman testified that on that same afternoon, he was seated at his desk when he heard "obnoxious obscenities" being shouted by Defendant. Hausman indicated that there was a "no trespassing" sign posted and Defendant was not welcome on the company property. He asserted that Defendant was a "complete disruption to everybody in the office." Hausman explained that he and his son went to the main office area and tried to calmly speak with Defendant in order to settle him down. They successfully managed to "talk him out of the room and into the * * * machine shop." Defendant, however, did not calm down and was still shouting obscenities. Thereafter, Defendant "jumped" another employee and a fight ensued. A tow pull was then parked behind Defendant's car so that he could not escape before the police arrived.
 {¶ 11} Officer William Scott, of the Akron Police Department, stated that when he arrived on the scene, Defendant and another employee were engaged in a fight. Backup was called and Officer Scott then attempted to break-up the fight. Officer Scott first restrained the employee, as he was on top of Defendant. Initially, Defendant was "stunned" but then returned to shouting obscenities. He indicated that Defendant appeared to be highly intoxicated.
 {¶ 12} Officer Douglas McHenry arrived and placed Defendant under arrest. Officer McHenry stated that Defendant was "very irate, very out of control, [and] would not listen[.]" After Defendant was handcuffed and placed under arrest, Officer McHenry performed a search of Defendant. A cellophane wrapper containing several crushed pieces of a white substance was recovered from Defendant's pocket. Robert Velten of the Ohio Bureau of Criminal Identification testified that he examined the substance and determined that it was .14 grams of cocaine, a Schedule II narcotic.
 {¶ 13} Clearly, the jury, in weighing the evidence, the credibility of the witnesses and testimony elicited at trial, could have concluded that Defendant was guilty of the various charges. Moreover, a determination as to what occurred is a question for the trier of fact, and it is not the function of the appellate court to substitute its judgment for that of the factfinder. See State v. Jenks (1991), 61 Ohio St.3d 259, 273. After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Defendant of possession of cocaine, menacing, and criminal trespassing. Consequently, Defendant's convictions were not against the manifest weight of the evidence.
 {¶ 14} This Court has previously observed that "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. As we have already determined that Defendant's convictions were not against the manifest weight of the evidence, we necessarily conclude that there was sufficient evidence to support the verdict in this case. Accordingly, Defendant's second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR I
"The trial court erred to the prejudice of [Defendant] when it admitted highly prejudicial and improper testimony regarding [Defendant's] prior wrong acts."
 {¶ 15} In his first assignment of error, Defendant asserts that the court committed prejudicial error when it permitted testimony regarding prior wrongful acts. For the reasons stated below, Defendant's assignment of error is not well taken.
 {¶ 16} Evid.R. 404(B) provides that evidence of past crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity with a certain character trait during the incident in question. However, such evidence may be admissible for other purposes, including intent, plan, knowledge, or absence of mistake or accident. Evid.R. 404(B). We note that the decision to admit or to exclude evidence is a matter left within the sound discretion of the trial court and will not be reversed absent a clear abuse that has materially prejudiced the defendant. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at 4. An abuse of discretion is more than an error of law or judgment and implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd., 66 Ohio St.3d 619,621, 1993-Ohio-122.
 {¶ 17} In the present matter, Defendant maintains that the introduction of testimony demonstrating that he used cocaine and hit Jones in the past was highly prejudicial and admitted for an improper purpose. We disagree.
 {¶ 18} At trial, Jones testified that Defendant has struck her in the past. The trial court indicated that it would allow this line of testimony as it demonstrated both Defendant's state of mind at the time of the April 4, 2003 incident and also Jones' belief of what she anticipated Defendant might do. See Evid.R. 404(B). The evidence was not admitted to show a particular character trait of Defendant. Accordingly, we are unable to conclude that the trial court abused its discretion when overruling Defendant's objections to the responses.
 {¶ 19} Additionally, Jones was asked whether she had ever seen Defendant use cocaine before. Jones indicated she believed Defendant had used it on prior occasions because he was previously convicted of cocaine use, however Jones explained that she never saw him use it. Assuming, without deciding, that it was error for the trial court to permit such testimony, we find the result to be harmless in nature as the undisputed evidence indicates that .14 grams of cocaine was found on Defendant's person at the time of his arrest. Thus, we are unable to conclude that Jones' testimony was highly prejudicial to Defendant as there was ample evidence in the record supporting a conviction for possession of cocaine without Jones' testimony. Defendant's first assignment of error is overruled.
 {¶ 20} Defendant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Baird, P.J. and Batchelder, J., concur.